**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

BENEVIDA FOODS, LLC,                      :   Index No. 15 CIV 2729 (LTS)
               Plaintiff/Counterclaim Defendant,   :
                              -against-   :
ADVANCE MAGAZINE PUBLISHERS INC. d/b/a   :
CONDE NAST,                               :
                Defendant/Counterclaimant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## ANSWER AND COUNTERCLAIMS

    Defendant Advance Magazine Publishers Inc. d/b/a Conde Nast, by and through its undersigned counsel, hereby responds to the Complaint of Plaintiff Benevida Foods, LLC as follows:

### SUMMARY OF CASE

    1.    Defendant admits it entered into a written agreement with Plaintiff, Defendant performed its obligations under the agreement, and that there were personnel changes at Defendant.  Defendant denies the remaining allegations set forth in this paragraph.

### PARTIES

    2.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

    3.    Defendant admits the allegations set forth in this paragraph.

### JURISDICTION AND VENUE

    4.    This paragraph states a legal conclusion to which no response is required.  To the extent a response may be deemed necessary, Defendant admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a).

5.      Defendant admits the allegations set forth in this paragraph.

6.      This paragraph states a legal conclusion to which no response is required.  To the extent a response may be deemed necessary, Defendant admits that venue is proper in this district.

7.      Defendant admits that the parties entered into a written contract, and respectfully refers the Court to that contract for the terms thereof.

## FACTUAL ALLEGATIONS

8.      Defendant admits the allegations set forth in this paragraph.

9.      Defendant admits that it publishes the magazine *Self*, as well as *Bon Appetit*, *Golf Digest*, *GQ*, *The New Yorker*, and *Vanity Fair*.  Defendant denies the remaining allegations set forth in this paragraph.

10.     Defendant admits the allegations set forth in this paragraph.

11.     Defendant admits that during Ms. Danziger's tenure as editor-in-chief for *Self*, Defendant explored opportunities to license the *Self* brand, including in connection with food products.  Defendant denies the remaining allegations set forth in this paragraph.

12.     Defendant denies that Plaintiff was formed to team up with Defendant, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

13.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.  Defendant denies that a copy of that agreement is attached as Exhibit A to the Complaint filed in this case.

2

14.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.

15.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.

16.     Defendant admits that by March 14, 2014, Plaintiff paid to Defendant the $250,000 Guaranteed Minimum Royalty Payment owed by Plaintiff for Contract Year 1 of the parties' agreement.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

17.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.

18.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

19.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, denies that the royalty payments under the agreement were set at above-market rates, and respectfully refers the Court to that agreement for the contents thereof.

20.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, denies that Defendant made a Licensor Marketing Commitment valued at $2 million per year for the first three years of the parties' agreement, and respectfully refers the Court to that agreement for the contents thereof.

21.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.

22.     Defendant admits that Plaintiff and Defendant entered into a written license agreement dated January 31, 2014, and respectfully refers the Court to that agreement for the contents thereof.

23.     Defendant admits the allegations set forth in this paragraph.

24.     Defendant admits that Ms. Danziger was involved in aspects of the promotion of the Self Healthy Kitchen line.  Defendant denies the remaining allegations set forth in this paragraph.

25.     Defendant admits that Ms. Danziger and other employees of Defendant had meetings and phone calls with Plaintiff and made efforts to promote the Self Healthy Kitchen line, including by appearing on television.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

26.     Defendant admits that it was committed to and supported the Self Healthy Kitchen line and that Plaintiff was able to sign up a few grocery retail chains to distribute the Self Healthy Kitchen line.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

27.     Defendant admits that Ms. Danziger's employment by Defendant terminated on April 3, 2014, as did the employment of a former publisher of *Self*.

28.      Defendant denies the allegations set forth in this paragraph.

29.     Defendant admits that, following the termination of Ms. Danziger's employment by Defendant, marketing for the Self Health kitchen line continued online and in print. Defendant denies the remaining allegations set forth in this paragraph.

30.     Defendant denies the allegations set forth in this paragraph.

31.     Defendant denies the allegations set forth in this paragraph.

32.     Defendant denies the allegations set forth in this paragraph.

33.     Defendant denies the allegations set forth in this paragraph.

34.     Defendant denies that it refused to support the line or that any support it was obligated to provide failed to materialize.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

35.     Defendant denies that it was breaching its marketing and promotional responsibilities or that Plaintiff put it on notice of any such breach.  Defendant admits that Plaintiff indicated it had doubts whether the Self Healthy Kitchen line could survive, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

36.     Defendant admits it participated in a meeting with Plaintiff in January, and denies the remaining allegations set forth in this paragraph.

37.     Defendant denies the allegations set forth in this paragraph.

38.     Defendant denies the allegations set forth in this paragraph.

39.     Defendant denies the allegations set forth in this paragraph.

## CAUSES OF ACTION

### Count I: Breach of Contract

40.     Defendant repeats and realleges each and every response to the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41.     Defendant admits the allegations set forth in this paragraph.

42.     Defendant denies the allegations set forth in this paragraph.

43.     Defendant denies the allegations set forth in this paragraph.

44.     Defendant denies the allegations set forth in this paragraph.

**Count II: Breach of Covenant of Good Faith and Fair Dealing**

45.     Defendant repeats and realleges each and every response to the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46.     Defendant admits the allegations set forth in this paragraph.

47.     Defendant denies the allegations set forth in this paragraph.

48.     Defendant denies the allegations set forth in this paragraph.

49.     Defendant denies the allegations set forth in this paragraph.

50.     Defendant denies the allegations set forth in this paragraph.

## AFFIRMATIVE DEFENSES

By alleging the separate and additional defenses set forth below, Defendant is not in any way agreeing or conceding that it has the burden of proof or the burden of persuasion on any of these issues.

### FIRST DEFENSE

The Complaint does not state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims are barred as a result of Plaintiff's failure to perform its own obligations under the Agreement.

<u>THIRD DEFENSE</u>

Plaintiff has not sustained any actual damage or injury by reason of the conduct of the Defendant.

<u>FOURTH DEFENSE</u>

Defendant's conduct was not the proximate cause of any injury to the Plaintiff.

<u>FIFTH DEFENSE</u>

Plaintiff has failed to allege damages with the requisite particularity.

<u>SIXTH DEFENSE</u>

Plaintiff has failed to mitigate its damages, if any, and, as a consequence thereof, Plaintiff is not entitled to recover the amount of damages alleged, or any other damages.

<u>SEVENTH DEFENSE</u>

Plaintiff's claim for Breach of Covenant of Good Faith and Fair Dealing is barred as duplicative.

<u>ADDITIONAL DEFENSES</u>

Defendant hereby gives notice that it intends to rely upon any additional affirmative defenses that become available or apparent during discovery and reserves the right to amend its Answer to assert such additional defenses.

WHEREFORE, Defendant requests that the Court enter judgment in its favor and against Plaintiff, award it its taxable costs and attorneys' fees, and afford it such other and further relief as the Court deems appropriate.

## COUNTERCLAIMS

Defendant/Counterclaimant Advance Magazine Publishers Inc. ("Advance"), by and through counsel, for its Counterclaims against Plaintiff/Counterclaim Defendant Benevida Foods, LLC ("Benevida"), states as follows:

### NATURE OF THE ACTION

1.      This countersuit seeks monetary damages for breach of contract, as well as pre-judgment interest, reasonable attorney's fees, and costs, against Benevida based on its breach of the parties' License Agreement dated January 31, 2014.

### PARTIES, JURISDICTION, AND VENUE

2.      Advance Magazine Publishers Inc. ("Advance") is a corporation organized and existing under the laws of the State of New York with its principal office at 1 World Trade Center, New York, NY 10007.

3.      Upon information and belief, Benevida is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale, Florida.

4.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between Advance and Benevida, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court has personal jurisdiction over Benevida because Benevida transacts business, including negotiating the Agreement, in New York, the claims in this case arise out of and are related to Benevida's contacts with New York, and Benevida expressly consented to the jurisdiction of this Court.

5.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the counterclaims occurred in this district, and Benevida expressly consented to venue in this district.

**FACTUAL BACKGROUND**

6.     Advance is the publisher of many of the most recognized magazines in the world, including *Vogue*, *Glamour*, *GQ*, and *Self*, among others.

7.     Since its launch in or about 1978, *Self* has been a leading authority on women's health, fitness, nutrition, beauty and style.  *Self* is widely read in the United States and internationally.

8.     Advance is the owner of the famous and distinctive federal and common law SELF trademark and service mark.  Advance owns a number of federal trademark and service mark registrations for the SELF mark.  Advance has also obtained a number of trademark and service mark registrations for marks incorporating the SELF term, such as THE SELF JUMP START DIET, and SELF WORKOUT IN THE PARK.

9.     On or about January 31, 2014, Advance entered into a License Agreement with Benevida pursuant to which Advance granted to Benevida an exclusive license to use the SELF trademark in connection with food products.

10.     In consideration for the license granted to Benevida, the License Agreement obligated Benevida to pay to Advance certain "Guaranteed Minimum Royalties" together with other applicable royalties.

11.  Specifically, Benevida was obligated to pay a Guaranteed Minimum Royalty of $250,000 by March 14, 2014 for Contract Year 1; $250,000 by March 1, 2015 for Contract Year 2; and $500,000 by March 1, 2016 for Contract Year 3.

12.     In addition to paying royalties to Advance, the License Agreement obligated Benevida to "spend three percent (3%) of cumulative Net Sales and Net Retail Sales per annum on marketing and promoting" the licensed food products.

13.     The License Agreement obligated Benevida to "use its best efforts . . . to sell the maximum quantity of Licensed Goods."

14.     The License Agreement obligated Benevida to obtain Advance's written approval before promoting or selling any product bearing Advance's SELF trademark.

15.     Advance fully performed all of its obligations under the License Agreement. Benevida accepted Advance's performance and the benefits thereof, and made full use of the valuable trademarks licensed to it by Advance.

16.     Benevida launched a line of foods under the licensed SELF HEALTHY KITCHEN brand.

17.     As of the date hereof, Benevida continues to utilize Advance's valuable SELF trademark. For example, Benevida's website continues to advertise Benevida's association with *Self* magazine and the SELF brand.

18.     Benevida has failed to and refused to pay amounts due and owing to Advance under the License Agreement. Benevida not only failed to pay the amount due, but communicated to Advance that it will not honor its obligations under the License Agreement.

19.     Benevida was obligated to pay to Advance on or before March 1, 2015 the $250,000 Guaranteed Minimum Royalty for Contract Year 2. Benevida failed to make this payment, and $250,000 remains due and owing to Advance.

20.     On or about March 18, 2015, with its Guaranteed Minimum Royalty payment already overdue, Benevida sent an email to Advance stating that, although its royalty obligation

is clearly spelled out in the License Agreement, Benevida "was not aware of this royalty bill." Benevida, however, was fully aware of the Guaranteed Minimum Royalty provision but wanted to avoid its payment obligation because it had sold less of the licensed products than it had hoped.

21.     Benevida's March 18 email conveyed Benevida's intent to withhold payment, indicating that "We [Benevida] are not comfortable investing more in the brand." Benevida lamented that it had other "enormous financial commitments coming due to keep supporting this brand," suggesting that it would not pay Advance.  Thus, rather than provide assurances to Advance that Benevida would abide by the parties' agreement, Benevida's email cast doubt that Benevida would pay the overdue amount.

22.     The License Agreement specified that Advance "will be entitled to terminate this Agreement" if Benevida does not cure any failure to pay within seven business days from its receipt of a hard copy notice of a failure to pay from Advance.

23.     On March 20, 2015, Advance gave written notice to Benevida that Benevida's failure to pay the $250,000 Guaranteed Minimum Royalty on or before March 1, 2015 constituted a material breach of the License Agreement.

24.  Benevida has no justification for its refusal to honor the terms of the License Agreement.

25.     Benevida did not make the payment due of it nor otherwise respond to Advance's notice of breach.  Instead, as a pretext to avoid its obligations, on April 1, 2015—the seventh business day since it had received notice of its failure to pay—Benevida sent a letter purporting to immediately terminate the License Agreement due to supposed "incurable and uncured material breaches" by Advance.  Benevida's pretext letter purported that Advance supposedly

11

had breached two sections of the License Agreement, but did not indicate how those, or any other section of the License Agreement, had been breached by Advance.

26.    Benevida's purported termination letter was a bad faith attempt by Benevida to avoid Benevida's contractual payment obligation which Benevida had no intention of honoring.

27.    Similarly, Benevida's initiation of this case was an improper preemptive strike attempting to improve Benevida's negotiating position.  As Benevida concedes, Advance "performed its obligations under [the] agreement enthusiastically."  Thus, Benevida's complaint asserts imagined claims that have no basis in the parties' License Agreement.  For instance, the Complaint claims that Advance is in breach because Advance "did not provide its 2015 promotional and marketing plan until the end of February 2015 . . . at which point it was over 60 days late."  Compl. ¶ 38.  But, the License Agreement *does not* contain any provision obligating Advance to provide any marketing or promotional plans to Benvida.  Rather, the License Agreement states that "*Licensee* [*i.e.*, Benevida] shall prepare a brief annual marketing plan for the Licensed Goods to present and discuss with Licensor."  Benevida's complaint is simply an effort to hide, and make excuses for, its own failures to abide by the terms of the License Agreement.

28.    Benevida's breaches of the License Agreement extend beyond its breach of the payment obligation.

29.    For example, Benevida has breached its obligation to "spend three percent (3%) of cumulative Net Sales and Net Retail Sales per annum on marketing and promoting" the licensed products.  Upon information and belief, Benevida failed to spend the required amount to market and promote the licensed products during Contract Year 1 under the License Agreement.  And, when specifically requested by Advance, Benevida failed to provide the required marketing

12

plan for Contract Year 2, including plans for how it intended to spend the three percent of cumulative net sales, as it was obligated to do by the License Agreement.

30.     Benevida failed, despite repeated requests and reminders from Advance, to provide the royalty report for the last quarter of 2014 required of it under the License Agreement.

31.     Benevida failed to use its best efforts, as required by the License Agreement, to sell the maximum quantity of Licensed Goods.

32.     The License Agreement requires Benevida to pay to Advance interest, at the rate of 3% above Bank of America's prime or base rate or the highest rate permitted by law, per month, for amounts unpaid under the License Agreement.

33.     The License Agreement obligates Benevida to pay any costs, including reasonable attorney's fees, incurred by Advance to recover amounts unpaid and owing by Benevida under the agreement.

## CLAIM FOR BREACH OF CONTRACT

34.     Advance repeats and realleges the allegations set forth in paragraphs 1 through 33 as if set forth fully herein.

35.     Advance and Benevida entered into a valid, binding and enforceable contract, the License Agreement.  Under the License Agreement, Benevida was obligated to pay Advance $250,000 on or before March 1, 2015.  Benevida has failed to pay this amount and is in breach of its obligations under the License Agreement.

36.     Advance performed all of its obligations under the License Agreement.

37.     Despite repeated demands by Advance for Benevida to cure its breaches, Benevida has not satisfied its obligations under the License Agreement and remains in default.

38.     Benevida's wrongful attempt to terminate and repudiate the License Agreement amounts to a further breach and/or an anticipatory breach of the License Agreement.  As a result of Benevida's breaches and anticipatory breaches, all amounts under the parties' agreement—an additional $500,000—are now due and owing.

39.     As a direct result of Benevida's breaches of the License Agreement, Advance has suffered, and will continue to suffer, direct and consequential damages in an amount no less than $750,000, plus interest running from the date of Benevida's breach, plus its costs including attorney's fees incurred in this action.

**WHEREFORE**, Advance demands judgment in its favor and against Benevida as follows:

(1) that Benevida be required to pay Advance the $750,000 it is owed pursuant to the License Agreement, together with interest accruing from the date of Benevida's breach;

(2) that Benevida be required to pay Advance any other actual, direct, and consequential damages resulting from Benevida's conduct;

(3) that Benevida be required to pay Advance its costs, including but not limited to its attorneys' fees, together with pre-judgment and post-judgment interest; and

(4) for such other and further relief as the Court may deem just and appropriate.

Dated:    New York, New York          Respectfully submitted,
          May 27, 2015

                                      LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


                                      By:_____
                                      Robert Penchina
                                      Rachel F. Strom
                                      321 West 44th Street, Suite 1000
                                      New York, NY 10036
                                      (212) 850-6100

                                      *Counsel for Defendant/Counterclaimant Advance Magazine*
                                      *Publishers Inc. d/b/a Conde Nast*